MATTISON, INC., Appellant,

v.

W. F. LARSON, INC., Appellee.

No. 8537.

Court of Civil Appeals of Texas, Amarillo.

Oct. 20, 1975.

Rehearing Denied Nov. 17, 1975.

Garner, Jesko & Purdom (Robert E. Garner), Lubbock, for appellant.

Day, Owen & Lyle (Gene V. Owen), Plainview, for appellee.

ROBINSON, Justice.

Plaintiff Mattison, Inc. sued defendant W. F. Larson, Inc., alleging that Larson defaulted on its contract to pay minimum royalties for an exclusive license to manufacture and sell litter collection machines known as "Litter Gitters." The trial court, sitting without a jury, rendered judgment that plaintiff take nothing. Plaintiff appeals, contending that the contract is unambiguous, that parol evidence was inadmissible, and that defendant Larson is liable for the minimum royalties. Reversed and rendered.

The contract was typed by Larson's secretary with minor changes from a longhand draft written by Mattison. The pertinent language reads as follows:

This agreement will be for three calender (sic) years and will begin 1 January, 1973. It will be renewable at the option of W. F. LARSON, INC. for additional one year periods.

Each year shall be payable in advance at the following minimums.

| Royalty: | $150.00 for each standard highway machine. | | |
| | $30.00 for each small machine. | | |
| Minimums: | 1973 Standard machines--30 or | $4,500.00 |
| | 1974 " " --60 or | 9,000.00 |
| | 1975 " " --100 or | 15,000.00 |

The agreement will be renewable at rate schedule of minimum royalties for years cited and minimum royalty payment of $15,000 for each calender (sic) year thereafter.

Mattison contends that the contract bound Larson to pay the minimum prescribed royalties for the years 1973–1975 as each came due. Larson contends that the contract is ambiguous, and that the parties intended it be an option contract renewable each year upon the prepayment of the royalties for the coming year. By written findings of fact and conclusions of law the trial court found that the first and last paragraphs quoted above are ambiguous; that the parties intended that the contract be renewable each year by prepayment of the royalties cited; and that the contract terminated by the failure of Larson to renew for 1974 by paying the minimum royalties.

■ The first question is whether the contract is ambiguous. A written contract is not ambiguous if it can be given one certain or definite legal meaning or interpretation. *Lewis v. East Texas Finance Co.,* 136 Tex. 149, 146 S.W.2d 977, 980 (1941). Unless they are so patently conflicting that it is impossible to do so, the provisions must be read together so as to give effect to all provisions and so that none are rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). If the provisions can be harmonized and reconciled, the contract is not ambiguous, and parol evidence is not admissible to create an ambiguity or to give the contract a meaning different from that which its language imports. *Lewis v. East Texas Finance Co.,* supra. But if, after applying established rules of interpretation, the meaning of the contract remains uncertain or doubtful or the contract remains reasonably susceptible to more than one meaning, it is ambiguous. *Skelly Oil Company v. Archer,* 163 Tex. 336, 356 S.W.2d 774 (1961).

 In the contract before us, the first quoted paragraph, standing alone, is unambiguous. It provides, in plain language and without equivocation, that the agreement will be for three years with an option in Larson to renew for one year periods thereafter. The question, then, is whether the subsequent and last quoted paragraph reasonably can be read so as not to conflict with the first paragraph and not to create an ambiguity.

 In *Anderson & Kerr Drilling Co. v. Bruhlmeyer,* 134 Tex. 574, 136 S.W.2d 800 (1940), the court inserted a comma in a mineral deed to assist in determining its meaning. The court stated the rule with reference to punctuation as follows:

> The words, not the punctuation, are the controlling guide in construing a contract. If the meaning of the words is clear the court will interpret a contract according to their meaning and without regard to the punctuation marks or the want of them. While punctuation may be resorted to in order to solve an ambiguity which it has not created, punctuation or the absence of punctuation will not of itself create ambiguity.

When we insert commas after the word "renewable" and the figure "$15,000," setting off the references to the minimum royalties, the last paragraph reads as follows:

> The agreement will be renewable, at rate schedule of minimum royalties for years cited and minimum royalty payment of $15,000, for each calender (sic) year thereafter.

With commas inserted, it is apparent that this paragraph does not conflict with the first paragraph which provides a duration of three years for the contract. It maintains the three-year royalty rate schedule minimum of $150.00 for each standard machine and $30.00 for each small machine and provides for a minimum royalty payment of $15,000 for each year after 1975 if Larson elects to renew the contract for one year periods after the three year term. We conclude that the contract is not ambiguous when considered as a whole and in the light of established rules of interpretation.

The judgment of the trial court is reversed, and judgment here rendered, as prayed for by appellant on appeal, that Mattison, Inc. recover from W. F. Larson, Inc. the sum of $24,000.00, and costs of suit. Rules 139 and 434, Texas Rules of Civil Procedure.